William Thomas STRALEY, Ruth R. Straley and William Reynolds Straley, a minor, by William Thomas Straley, his guardian ad Litem, Appellants,

v.

UNIVERSAL URANIUM AND MILLING CORPORATION, a Nevada corporation, Kent Johnson, Louis Stillson, Elmer K. Agaard, Carl Fisher, Little Star Uranium Co., Inc., a Wyoming corporation, Anschutz Drilling Co., Inc., a Colorado corporation, Appellees.

No. 16986.

United States Court of Appeals Ninth Circuit.

April 19, 1961.

Greenbaum, Baker & Ancel, Mark G. Ancel, Los Angeles, Cal., for appellant.

Horace J. Knowlton, Salt Lake City, Utah, for appellees.

Robert W. Driscoll, San Marino, Cal., for corporate appellees.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

JERTBERG, Circuit Judge.

The sole question presented on this appeal is: may laches bar the recovery by the purchaser of the consideration paid for securities issued in violation of Title 15 U.S.C.A. § 77e, where the purchaser proves his claim under Title 15 U.S.C.A. § 77l(1), and has brought his action within one year from the date of the sale of such securities as required by Title 15 U.S.C.A. § 77m?

At the conclusion of the trial which followed pretrial conferences culminating in a pretrial order, the district court denied relief to appellants on the ground that laches barred them from asserting their claims against appellees. From such judgment appellants filed a timely appeal.

Jurisdiction of the district court is based on the provisions of Title 15 U.S.C.A. § 77*l* and Section 77v. This Court has jurisdiction under Title 28 U.S.C.A. §§ 1291 and 1294.

Section 77e(a) (1) in substance declares it unlawful for any person directly or indirectly to make use of the mails or instruments of transportation or communication in interstate commerce to sell a security unless a registration statement as to such security is in effect. Section 77*l*(1) provides in substance that any person who sells a security in violation of Section 77e shall be liable "to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." Section 77m provides in substance that no action shall be maintained to enforce any liability created under Section 77*l*(1) unless brought within one year after the violation on which it is based.

Under findings of fact of the district court, which are unquestioned on this appeal, the appellants would have been entitled to judgment against the appellees for the full consideration paid, plus interest (less $400 which was stipulated to be the value of the stock at the time of the tender), if the district court had not found that the claims of appellants were barred by laches.

On November 21, 1955, appellants purchased 30,000 shares of the common stock of Universal Uranium and Milling Corporation, a Nevada corporation, one of the appellees (hereinafter called "Universal"), of the par value of one cent per share, for 35 cents per share. The sales of the stock to appellants were consummated at Los Angeles by one Clyde Morton, an agent of Universal. In January 1956, Morton was called before the Securities and Exchange Commission in Los Angeles, and appellants then learned that the shares of stock were sold in violation of the Securities Act and that they could recover the consideration paid for such stock if they filed a claim therefor. On March 2, 1956, the shareholders of Universal voted to merge said corporation with Little Star Uranium Co., Inc., a Wyoming corporation, one of the appellees (hereinafter called "Little Star"). Appellants gave their proxies to Clyde Morton with instructions to vote the same in favor of the merger. Clyde Morton attended the meeting and voted appellants' stock in favor of the merger. The merger was completed on May 4, 1956, and Little Star, as the successor and surviving corporation, took over the assets and assumed all of the liabilities and obligations of Universal. On July 3, 1956, appellants exchanged their shares of stock in Universal for an equal number of shares in Little Star. At the time of this merger the shares of Little Star were selling on the open market in Salt Lake City for fifty cents per share. During the summer of 1956 the shareholders of Little Star voted to merge with Anschutz Drilling Co., Inc., a Colorado corporation, one of appellees (hereinafter called "Anschutz"), and the merger between Little Star and Anschutz was consummated and Anschutz, as the successor and surviving corporation, took over all of the assets and assumed all of the liabilities and obligations of Little Star. None of the shares of stock of appellants was voted for the merger, although appellants made no objections to the same, and on October 8, 1956 appellants exchanged their shares of stock in Little Star for shares of stock in Anschutz. By early November 1956, the shares of stock of Anschutz had dropped to a point where they had only a nominal value. On November 20, 1956 appellants instituted suit based on the rescission of the sales of the shares of stock to recover the purchase price paid therefor. They had previously made tender of the securities to appellees and been met with refusal of their demand for the return of the purchase price. The appellees affirmatively alleged in their answers that the appellants' claim was barred by laches

in failing to act prior to the mergers hereinbefore mentioned and the resultant detriment thereby caused to the appellees.

The district court specifically found that the appellants delayed making demands upon the appellees until the day before the expiration of the statute of limitations and that "said delay was with the intention of determining the market price of the stock to decide whether it would be to the advantage of" appellants "to keep said stock or to obtain the return of their money"; that said delay resulted in injury to appellees in that, if appellants had requested a refund of their money within five or six months after ascertaining that the stock was sold in violation of the Securities Act, appellees could have made the refund without loss; that said delay was unreasonable. The district court also found that the appellants had full knowledge of the matters referred to in the complaint on and before the mergers of Universal and Little Star, and Little Star and Anschutz; that appellants failed to give either Little Star or Anschutz notice of their claims prior to either of the mergers, and that if appellants had asserted their claims against Little Star prior to the merger with Universal, or prior to Little Star's merger with Anschutz, each of said corporations would have had the opportunity to have adjusted or settled the said claims prior to either merger; and that as a result of the inaction of appellants Anschutz and Little Star were misled to their detriment and that each merger was consummated without knowledge of appellants' claims.

From the extensive findings of fact of the district court on the subject of laches, the district court concluded the appellants waited an unreasonable time "after discovering that they could get their money returned before commencing this action" and that the appellants' claims are barred by laches.

■ The basic purpose and intent of Congress in enacting the Securities Act of 1933 was to protect innocent purchasers of securities, and the provisions of the Act must be construed in light of

such intent and purpose. A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 1940, 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500. In accordance with such intent and purpose it was held in the above cited case that a sale of securities in violation of Section 77e(a) (1) was not void but merely voidable at the option of the purchaser.

■ The basic issue presented on this appeal arises from the conclusion of the district court that the equitable doctrine of laches may be a defense to a claim arising under Section 77*l*(1), and if applicable under the facts of the particular case may bar recovery notwithstanding the fact that the action may be instituted within the period of limitations provided in Section 77m. In respect thereto the district court stated:

> "The Securities Act itself is silent as to whether laches can be a defense, but since the remedy provided by the Act is essentially one of rescission the silence of Congress should be construed, in my opinion, as indicating that all existing defenses to a claim for rescission * *, including laches, should apply. Such a construction does not emasculate the legislative purpose or cause noxious consequences: the mere fact that a particular investor's remedy is barred does not mean that private investors worthy of protection are barred." [182 F.Supp. 942].

We do not share the view expressed by the district court that the remedy provided by the Act is essentially one in equity. Section 77*l* provides that the person who sells unregistered securities shall be liable to the person purchasing such security from him, "who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." While under Rule 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A., there is in the federal court but one form of action

known as "civil action," and while legal and equitable remedies may be administered in the same forum and in the same action, the substantive distinction between law and equity has not been abolished. Therefore, in order to determine whether an aggrieved person in any particular action is pursuing a legal or equitable remedy depends upon the nature of the relief which such aggrieved person seeks, and not from the statute which creates the right to sue either in law or in equity. This is made plain in Deckert v. Independence Corp., 1940, 311 U.S. 282, at pages 287–288, 61 S.Ct. 229, 233, 85 L.Ed. 189, where the Supreme Court stated:

> The Securities Exchange Act "as a whole indicates an intention to establish a statutory right which the litigant may enforce in designated courts by such legal or equitable actions or procedures as would normally be available to him. Undoubtedly any suit to establish the civil liability imposed by the Act must ultimately seek recovery of the consideration paid less income received or damages if the claimant no longer owns the security. Section 12(2), 15 U.S.C. § 77(*l*)(2), 15 U.S.C.A. § 77(*l*)(2). But Section 12(2) states the legal consequences of conduct proscribed by the Act; it does not purport to state the form of action or procedure the claimant is to employ.

> "Moreover, in Section 22(a), 15 U.S.C., § 77v(a), specified courts are given jurisdiction 'of all suits in equity and actions at law brought *to enforce* any liability or duty created by this subchapter.'[2] The power *to enforce* implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case. If petitioners' bill states a cause of action when tested by the customary

rules governing suits of such character, the Securities Act authorizes maintenance of the suit, providing the bill contains the allegations the Act requires. That it does not authorize the bill in so many words is no more significant than the fact that it does not in terms authorize execution to issue on a judgment recovered under Section 12(2).

> "[2] Emphasis added."

In the instant case the appellants seek only a money judgment against the appellees in the amount of the consideration paid for the securities involved. Appellants make no claim that the appellees are insolvent. They do not seek equitable relief in the form of an injunction or the appointment of a receiver. Neither do they seek the aid of the court in impressing a trust or lien upon any property to secure enforcement of the money judgment. In our view, appellants' action is one at law for money judgment. Under such circumstances the district court erred in concluding that the purely equitable defense of laches was available to appellees.

The fact that we have concluded that the district court erred in the application of the doctrine of laches to this case does not necessarily mean that the appellants must prevail in the action. In addition to the defense of laches, we note from the record that the appellees also interposed the defenses of waiver by the appellants of the statutory right to recover the consideration paid and estoppel to assert such right. Such defenses were not passed upon by the district court for the reason, undoubtedly, that the district judge entertained the view that the defense of laches was dispositive of the action. Such defenses are available to one against whom an action at law is brought on a contract declared voidable by common law. On principle, we see no reason why such defenses would not likewise be available to one against whom an action is brought on a contract declared voidable by judicial construction of a statute. There is

nothing in the language of Section 77*l* or its legislative history to indicate that Congress intended to create a right enforceable in law or in equity not subject to defenses available at law or in equity to an action based on a voidable contract. The silence of Congress cannot be construed as an intention to make such defenses unavailable. Since "the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case," Deckert v. Independence Corp., supra, we believe that the person against whom a right is asserted under Section 77*l* has available to him in defense of the action the defenses normally available to him "according to the exigencies of the particular case". Such defenses are not affected by the limitation period contained in Section 77m because, if established, they bar the right created by Section 77*l* and not the remedy.

Since these defenses were not considered or passed upon by the district court, nor briefed on this appeal, we are of the view that justice requires that the judgment below be vacated and set aside, and the cause remanded to the district court for consideration and determination of the issues raised by the defenses of waiver and estoppel, for the purpose of taking new or additional evidence thereon if deemed required by the district judge, the making of appropriate findings of fact and conclusions of law, and the entry of a judgment based thereon consistent with the views herein expressed. If on remand the district court should find and conclude that the appellants are entitled to recover judgment against the appellees, then the district court shall find and conclude: (1) under the issues raised by the cross-complaint of the appellee Anschutz against the individual appellees, under Rule 13(g) of the Federal Rules of Civil Procedure; (2) under the issues raised by the cross-complaint filed by the individual appellees against the appellee Universal; and (3) under the issues raised by the third party complaint filed by the appellee Anschutz against the defendant Horace J. Knowlton.

It is so ordered. Each party shall bear his or its own costs on appeal.