Shirley WOOLF and Robert Milberg, Plaintiffs-Appellants,

v.

S. D. COHN & COMPANY and Sidney D. Cohn, Defendants Third-Party Plaintiffs-Appellees,

FIBERGLASS RESOURCES CORPORATION, Third-Party Defendant.

Shirley WOOLF et al., Plaintiffs-Appellants.

v.

S. D. COHN & COMPANY et al., Defendants Third-Party Plaintiffs-Appellees,

v.

FIBERGLASS RESOURCES CORPORATION, Third-Party Defendant-Appellee.

Nos. 73–4044, 74–2449.

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1975.

Lewis W. Miles, II, Richard E. Reckson, Miami, Fla., for plaintiffs-appellants.

Aaron S. Podhurst, Robert Orseck, Miami, Fla., for appellees.

Terrence J. Russell, Ft. Lauderdale, Fla., for Fiberglass Resources Corp.

ON PETITION FOR REHEARING

Before RIVES, WISDOM and COLEMAN, Circuit Judges.

PER CURIAM:

We consider it appropriate to write a short opinion in denying the petition for rehearing.

The petitioners urge that this Court was in error in declining to allow the *in pari delicto* defense on the facts of this case. We remain convinced that our analysis of the *in pari delicto* problem in this case is correct. The doctrine, of course, arose in the English Chancery, where cases typically involved purely private disputes between private individuals. Long before the creation of our present day comprehensive federal regulatory schemes governing commerce and finance, the doctrine had been refined to require that the alleged wrongdoing of a plaintiff bear an immediate and necessary relationship to the equitable relief that he sought from the court. In cases implementing these comprehensive regulatory systems, however, an additional requirement appears to have developed.

One way to express it is that used by Judge Aldrich in *Kuehnert v. Texstar Corp.,* 5 Cir. 1969, 412 F.2d 700: In determining whether to allow the *in pari delicto* defense, the court must *also* give consideration to "which decision will have the better consequences in promoting the objective of the securities laws by increasing the protection to be afforded the investing public."

Closely related to this concern with the impact a common law defense might have on the implementation of strong federal regulatory objectives is the treatment accorded the defense by the United States Supreme Court in the antitrust area. This development stretches back a good many years further than the development in the securities area, but that is only because the private action in the securities area has only recently assumed a role of signal importance. Two of the leading cases in the antitrust area are *Kiefer-Stewart Co. v. Seagram & Sons,* 1951, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219, and *Perma Life Mufflers, Inc. v. International Parts Corp.,* 1968, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982; we make further mention of a third here. In *Simpson v. Union Oil Co.,* 1964, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98, a lessee of a major oil company who operated a retail gasoline station was allowed to proceed with his private treble damage action against the company despite the fact that he had voluntarily entered into the lease and participated actively in the "consignment" system and had assisted in the resale price maintenance scheme effected thereby. And, of course, four years later, in the *Perma Life* case, the Supreme Court stated flatly that "We . . . hold that the doctrine of *in pari delicto,* with its complex scope, contents, and effects, is not to be recognized as a defense to an antitrust action." 392 U.S. at 140, 88 S.Ct. at 1985.

■ The problem of reconciling the traditional equitable defenses with the policies served by the emerging private rights of action under the federal securities laws has not yet reached the United States Supreme Court, to be sure. It is true that the private action is expressly established by statute in the antitrust area, and has been allowed in the securities area as a matter of judicial interpretation. That is not such a great difference, particularly when we consider that the common law defenses themselves are judicially fashioned doctrines. Moreover, the same important functions of deterring violations and of compensating victims can readily be ascribed both to the private treble damage antitrust action and to the private rights of action that have been implied under the Securities Acts. True, the *in pari delicto* defense has expressly been recognized in limited circumstances in securities fraud cases. The two major cases in the area are both in this Circuit, and are discussed in this panel's original opinion. The requirement has emerged in *James v. DuBreuil,* 5 Cir. 1974, 500 F.2d 155, that the fault of the parties must be "clearly mutual, simultaneous, and relatively equal". Moreover, the effect on the investing public or on the implementation of important features of the regulatory scheme must be so small as to permit the Court to conclude that allowing the defense would not interfere with "the objective of the securities laws [of] increasing the protection to be afforded the investing public", as Judge Aldrich noted in the earlier *Kuehnert* case, 412 F.2d at 704.

The disturbing thing about the present case is that abuses in the area of private placements strike at the very heart of the protections the Securities Acts seek to afford investors, for, as noted in our original opinion, no requirements of reporting to the S.E.C. are imposed upon issuers and their agents who undertake to issue new securities under the protective cloak of the Section 4(2) exemption. The scarce enforcement resources of the S.E.C. are adequate only to police the most flagrant and widespread abuses in the private placement area. The private action therefore arguably occupies an even more important place in the area of private placements than in other areas of Securities Act enforcement where ac-

tivities of an issuer must both be reported to and approved by the S.E.C.

■ We concede that the plaintiffs in this case are not free from sin. But the question is not the purity of the plaintiffs in an abstract sense, but rather whether their fault was equal, simultaneous, and vital to the effectuation of the fraudulent scheme (as the cooperation of a co-conspirator is vital to the accomplishment of the ends of a conspiracy); and whether the remedial purposes of the securities laws will be furthered more by allowing the defense than by disallowing it. We remain convinced that the plaintiffs' fault did not rise to the level that should bar their 10b–5 action. The fault of the parties is not equal, simultaneous, and mutual, even if this were a purely private action seeking to vindicate purely private rights. The important role such actions play in enforcing the Securities Acts, however, resolves the doubt in favor of the plaintiffs here.

The appellees also contend that we have confounded the purpose of Rule 10b–5 with that of Section 4(2) of the 1933 Act. This contention is without merit. In the broadest terms, this case involves what information and how much information an issuer and its agent (in this case S. D. Cohn and Company) must disclose to potential investors in the private placement context. Though the record at this stage is inconclusive on the point, it strongly suggests to us that the defendants in this case knowingly attempted to take advantage of the private placement exemption from registration and in the process failed to state material facts that a reasonably prudent investor would take into account in making his investment decision. We outlined in our original opinion a number of highly relevant items of information that might affect a prudent investor's decision. So far as the present record indicates, these were not revealed to the offerees in this transaction. More specifically, a large amount of what the registration process would have brought to the attention of potential investors was not disclosed. We are aware that the S.E.C. announced certain amendments to its new Rule 146 shortly before our original opinion in this cause was announced. These amendments, *inter alia,* allow non-reporting issuers seeking to take advantage of the new rule to omit certain non-material information, to condense certain material, and to omit financial statements of the sort required by Part II of a registration statement, in their communications with prospective purchasers. In our original opinion, we referred to new Rule 146 in our discussion of the disclosure that must be made to prospective purchasers on the private placement context. We wish to make it clear that the amendments to Rule 146 do not alter our conclusions there.

■ We relied upon the law that had developed under Section 4(2) of the 1933 Act to provide a yardstick for judging the propriety of business practices in the private placement area. Not every failure to qualify for the Section 4(2) exemption rises to the level of a violation of Rule 10b–5. We noted that 10b–5 liability could be predicated on omissions to disclose information that our case law in this circuit on private placements required to be disclosed. Depending on the amount of information the defendants failed to disclose to offerees and its materiality to the transaction, there comes a point where the failure to disclose can be characterized as a violation of the third clause of Rule 10b–5, if not of the first two clauses. We wish to ensure that, on remand, the district judge will focus not so much upon specific misrepresentations that were alleged (as he did in his earlier consideration of the case), but will also be aware of the stringent disclosure requirements our Court has held necessary in the private placement context. Although our decisions have broadened the concept of what is "material" in the area of private placements, we do not mean to imply that every failure to comply either with Rule 146 or with the judge-made law on qualifying for the Section 4(2) exemption would give rise to 10b–5 liability.

The petition for rehearing is therefore denied, and, no Judge in active service having requested that the cause be reheard en banc (see Local Rule 12), the petition for rehearing en banc is also denied.