Irene Risser **MILLER**, Plaintiff,

v.

**INTERFIRST BANK DALLAS, N.A.,** et al., Defendants.

**Civ. A. No. CA 3–82–1263–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 30, 1985.

Ben L. Krage, Kasmir, Willingham & Krage, Dallas, Tex., for plaintiff & intervenor Johnson.

Ed T. Smith, Bonham, Tex., for intervenor Johnson.

Robert Harms Bliss, Richard S. Golombeck, Bliss & Hughes, Dallas, Tex., for Richard Golombeck and Carl M. McWherter III.

John H. Hall, Dallas, Tex., for J.J. French, Jr.

Louis P. Bickel, Linda G. Moore, Bickel & Case, Dallas, Tex., for Southwest Pump Co., Inc.

John L. Hauer, Michael Byrd, Clarice M. Davis, Akin Gump Strauss Hauer & Feld, Dallas, Tex., for Interfirst Bank Dallas N.A., Joe D. Nelson and Robin M. Kain.

Fletcher L. Yarbrough, Barbara M.G. Lynn, Lindsay H. Lew, Carrington Coleman Sloman & Blumenthal, Dallas, Tex., for defendants S.R. Estes, W.C. Estes, W.T. Moody, B. Cole, J.A. Rodgers, L. Donaghey, O.M. Weaver and G.V. Danner.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on motions to dismiss, filed by defendants InterFirst Bank Dallas, N.A. ("InterFirst"), Southwest Pump Company, Incorporated ("Southwest"), and eleven individuals,[1] for failure to state a claim upon which relief can be granted. For the reasons stated below, all of the motions to dismiss are granted and plaintiff's claims are dismissed in their entirety.

---

**1.** William C. Estes, Sally R. Estes, Gene V. Danner, O.M. Weaver, James A. Rodgers, W.T. Moody, Buster Cole, Lewis Donaghey, J.J. French, Jr., Joe D. Nelson and Robin M. Kain.

### Allegations of the Complaint

Plaintiff's first amended complaint asserts both a derivative federal claim for Southwest's benefit and several pendent state claims belonging to plaintiff. According to plaintiff's allegations, defendant Sally R. Estes began a campaign, as early as 1975, to obtain ownership or control of the stock in Southwest, a closely held corporation. At all times relevant here, plaintiff was a minority shareholder in Southwest. From 1977 through 1981, it is alleged, Sally R. Estes controlled the Board of Directors of Southwest by controlling a majority of the shares entitled to vote at stockholders meetings and through other means. During the same time period, defendant Inter-First was a substantial lender to Southwest. As of 1980, InterFirst, as successor trustee for the Joe A. Risser Estate Trusts, controlled 968½ shares ("the Risser shares") out of the 3,000 shares of Southwest then issued and outstanding.

InterFirst and the other defendants are alleged to have conspired with one another to install Sally R. Estes as the dominant owner of Southwest and to improve the security of InterFirst's loans to Southwest. In furtherance of this conspiracy, Inter-First is alleged to have clandestinely sold the Risser shares to Southwest in December, 1980 for $341,600 in cash (which Inter-First loaned to Southwest) and stock in the Bonham State Bank (for which Southwest paid $18,000).

It is thus alleged that Southwest gave InterFirst consideration for the Risser shares totalling only $359,600, at a time when the Risser shares had a fair market value of at least $3,868,382. Southwest purportedly purchased the Risser shares in order to retire this stock, but plaintiff maintains that the sale was intended solely to benefit Sally R. Estes by giving her control of the Risser shares and, ultimately, of Southwest. The details and purpose of this transaction were, plaintiff maintains, kept from her and the other minority shareholders.

In November of 1981, again according to plaintiff, Southwest sold the Risser shares to Sally R. Estes in furtherance of the conspiracy. Although the stated price for the sale of the Risser shares was $542,360, Southwest received property in exchange for the stock worth less than half the stated price. Moreover, at the time Sally R. Estes purchased the Risser shares, those shares had a fair market value of at least $12,261,210.

### Relief Sought

For these alleged wrongs, plaintiff seeks the following relief on behalf of Southwest:

(1) rescission of the sale of the Risser shares from Southwest to Sally R. Estes or, in the alternative, compensatory damages in the sum of at least $12,003,400 and punitive damages in the sum of at least $24,006,800; and

(2) damages resulting from the waste and misuse of the assets of Southwest.

On behalf of herself and the other minority shareholders similarly situated, plaintiff seeks damages from Southwest resulting from the malicious suppression of dividends of at least $440.70 per share. For herself alone, plaintiff seeks punitive damages from Southwest of $372,832, arising from the suppression of dividends; from InterFirst she seeks actual damages of $8,273,002 and exemplary damages of $16,546,004 resulting from the alleged breach of agreement and fiduciary duty.

Plaintiff seeks to litigate the corporate wrongs derivatively, on behalf of Southwest, under the federal securities laws. Rule 23.1 of the Federal Rules of Civil Procedure establishes the procedure governing derivative actions by shareholders of corporations, i.e., actions by one or more stockholders to enforce a corporate cause of action. Any relief awarded in such a suit takes the form of a judgment against the defendants, secured by the stockholders, in favor of the corporation. *See Price v. Gurney*, 324 U.S. 100, 105, 65 S.Ct. 513, 516, 89 L.Ed. 776 (1945); *Lewis v. Knutson*, 699 F.2d 230, 237–39 (5th Cir.1983);

7A Wright and Miller, Federal Practice and Procedure § 1821 at 294 (1972).

Defendants contend that this case cannot be maintained as a derivative action because plaintiff's first amended complaint does not state a claim upon which this court can grant the relief sought by plaintiff on behalf of Southwest. Persuaded that defendants' position is sound, the court has concluded that Southwest should be barred from recovery on its federal securities claim by the equitable doctrine of *in pari delicto*. In the absence of any other basis for federal subject matter jurisdiction, plaintiff's pendent state law claims should then be dismissed without prejudice.

### Legal Analysis

In determining whether to grant a motion to dismiss for failure to state a claim, the court must assume the truth of the facts alleged in the complaint. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). The motion should not be granted unless it appears beyond doubt that the plaintiff can establish no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In the derivative portion of her suit, plaintiff claims a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") and Rule 10b–5 promulgated thereunder, as well as violations of various state laws. Derivative suits for violations of the federal securities laws are brought rather infrequently; nevertheless,

> when [corporate] officers and directors have defrauded a corporation by causing it to issue securities for grossly inadequate consideration to themselves or [to] others in league with them or [to] the one controlling them, the corporation has a federal cause of action under § 10(b) and Rule 10b–5, notwithstanding [the fact] that the perpetrators of the fraud

are corporate insiders liable under state law.

*Wolf v. Frank*, 477 F.2d 467, 477 (5th Cir.), *cert. denied*, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973) (quoting *Rekant v. Desser*, 425 F.2d 872, 882 (5th Cir.1970)). This situation is precisely that alleged in plaintiff's complaint as a basis for recovery by Southwest, in defense of which the defendants have raised the issue of *in pari delicto*.

■ Generally, a court has discretion to bar recovery under the doctrine of *in pari delicto* only where the plaintiff's conduct has been unconscionable and is immediately and necessarily related to the matter for which the plaintiff seeks relief. *Woolf v. S.D. Cohn & Company*, 515 F.2d 591, 601–03 (5th Cir.), *reh'g denied*, 521 F.2d 225 (5th Cir.1975) (per curiam opinion), *vacated and remanded on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976). The Fifth Circuit has upheld the *in pari delicto* defense in securities fraud cases despite the apparent tension between the objectives of the federal securities regulatory scheme[2] and this common law equitable defense. *Kuehnert v. Texstar Corporation*, 412 F.2d 700, 704 (5th Cir.1969). *See also Wolfson v. Baker*, 623 F.2d 1074, 1082–83 (5th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981); *Woolf*, 521 F.2d at 226–27 (5th Cir. 1975).

The Fifth Circuit cases have resolved this tension in the securities law context by requiring, as a prerequisite to application of the *in pari delicto* defense, that (1) the fault of the parties must be clearly mutual, simultaneous, and relatively equal; (2) the plaintiff must be an active, essential, and knowing participant in the illegal activity; and (3) the effect on the investing public or on the regulatory scheme, caused by permitting the defense, must be so slight that it does not interfere with the objectives of the securities laws. For a discussion of these requirements, *see Fogarty v. Securi-*

---

**2.** The objectives of implied private rights of action under the securities laws are two-fold: (1) deterrence of future violations and (2) compensation to those who have been damaged as a result of past violations. *Woolf*, 515 F.2d at 604.

ty Trust Company, 532 F.2d 1029, 1033 (5th Cir.1976); Woolf, 515 F.2d at 604; James v. DuBreuil, 500 F.2d 155, 158 (5th Cir.1974). The third element also encompasses the requirement that the court consider and give substantial weight to the impact, if any, which the violation itself has had upon the investing public. Woolf, 515 F.2d at 604–05.

Conceptually, permitting the in pari delicto defense to bar recovery by the corporation in a case such as this would seem at first glance always to preclude the use of a derivative suit to deter wrongdoing by corporate insiders. Nevertheless, while the courts in this circuit have not actually applied the defense against a corporation in a derivative action, the Fifth Circuit has recognized its potential for application in this context under appropriate circumstances. See Hooper v. Mountain States Securities Corporation, 282 F.2d 195, 207–08 (5th Cir.1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961) (civil action by trustee of bankrupt corporation to recover for violation of § 10(b)).[3] Viewing the transaction here at issue both in its entirety and as two distinct parts of an overall scheme to defraud, as alleged in the complaint, the court is convinced that the defense of in pari delicto is appropriate under the circumstances of this case.

The allegations in paragraphs 18 through 22 of the plaintiff's amended complaint implicate the corporation as a participant in a scheme to place Sally Estes in control of Southwest, without the knowledge or consent of the minority shareholders, by defrauding the beneficiaries of the Joe A. Risser Estate Trusts. This plan required two steps. In the first step, InterFirst "clandestinely" sold to Southwest the Risser shares at a price far below their fair market value. In the second, Southwest resold the Risser shares to Sally Estes, again at a price far below their fair market value. Yet plaintiff's derivative claim focuses solely on step two of the transaction.

In essence, plaintiff is seeking to recover, for the benefit of Southwest, the increased value of stock which the corporation fraudulently obtained in a transaction inextricably intertwined with the stock transaction for which the corporation now seeks to recover. The plaintiff here is not seeking to rescind, cancel, or disavow the stock purchase from the trust executed as step one of the fraudulent scheme. On the contrary, plaintiff is seeking to obtain for Southwest the benefit of that fraud which it conspired to perpetrate upon the trust.[4]

Southwest is equally at fault with the other defendants herein since it embarked upon a mutual plan to defraud the trust beneficiaries.[5] Moreover, the acts of Southwest were clearly simultaneous with the transgressions of the defendants since Southwest and at least some of the defendants were parties to the sale of the Risser shares. See Woolf, 515 F.2d at 604. Southwest was also actively involved with the defendants in repurchasing the Risser shares; indeed, Southwest was an essential participant since it had acquired the financial resources with which the shares were purchased. See Wolfson, 623 F.2d at 1082;

3. The defendant in Hooper claimed that the trustee could not bring suit on behalf of the corporation because the corporation was in pari delicto with the alleged conspirators. 282 F.2d at 207. Although the court found that defendant's argument was meritless because the corporation had been unknowingly duped into losing the value of 700,000 shares exchanged in a fraudulent scheme, the court did not reject the defense as inappropriate in the context of a derivative suit. Id. at 208.

4. Kuehnert teaches that whether or not in pari delicto should be applied in a given case depends on "which decision will have the better consequences in promoting the objectives of the securities laws by increasing the protection to be afforded the investing public." 412 F.2d at 704. Here, denial of the in pari delicto defense would appear to reward, rather than punish or deter, Southwest's participation in the conspiracy to purchase the Risser shares at a price far below market value. To that extent, denial of the defense would frustrate, rather than promote, the objectives of the securities laws.

5. Cf. Kuehnert at 704: "Thus, when plaintiff and defendant had conspired together to cheat plaintiff's creditors, and instead the defendant cheated the plaintiff, no relief was given."

*DuBreuil,* 500 F.2d at 159; *Kuehnert,* 412 F.2d at 703–04.

 Finally, this case presents strong justifications for applying the *in pari delicto* defense because the dispute involves a relatively small number of persons concerning two transactions in the stock of a close corporation. Because Southwest's stock is not publicly traded, it does not appear this particular violation of the securities laws has had any appreciable impact upon the investing public.[6] Thus, neither the investing public, nor the implementation of the securities laws, will be adversely affected by upholding the defense in this case. *Cf. Wolfson,* 623 F.2d at 1082; *DuBreuil,* 500 F.2d at 160; *Kuehnert,* 412 F.2d at 705. In sum, the court finds that the defense of *in pari delicto* is applicable to bar Southwest's recovery under Section 10(b) with respect to the transaction at issue herein. Consequently, plaintiff has failed to state a federal claim on which relief can be granted.

### Pendent State Claims

After dismissal of plaintiff's Section 10(b) claim, only state claims remain for adjudication. In the exercise of the court's discretion, therefore, the plaintiff's pendent state claims should be dismissed without prejudice. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

### Conclusion

The motions to dismiss for failure to state a claim upon which relief may be granted filed by defendants InterFirst, Southwest and eleven individuals are GRANTED. Plaintiff's claim under Section 10(b) and Rule 10b–5 is DISMISSED with prejudice. Plaintiff's pendent state

law claims are DISMISSED without prejudice.

SO ORDERED.

---

**6.** *See Kuehnert* at 703: "In private SEC violat[ions] the degree of public interest is not comparable to that made apparent by the triple damage provision; *we see no sufficient public interest when the only question is one of accounting between joint conspirators"* (emphasis added).