Louis E. WOLFSON, Plaintiff-Appellant,

v.

John D. BAKER, Jr., et al.,
Defendants-Appellees.

No. 78–2072.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1980.

William H. Maness, Jacksonville, Fla., Saxe, Bacon & Bolan, Roy M. Cohn, New York City, for plaintiff-appellant.

Mahoney, Hadlow & Adams, Thomas M. Baumer, Jacksonville, Fla., for defendants-appellees.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

In 1967, Appellant Louis E. Wolfson was convicted following a jury trial in the Southern District of New York on nineteen counts of an indictment charging him with violating and conspiring to violate sections 5 and 24 of the Securities Act of 1933, 15 U.S.C. §§ 77e and 77x, in connection with the sale of unregistered stock of Continental Enterprises, Inc. (Continental). Wolfson was sentenced to concurrent prison terms of one year on each count and was fined $100,000. The conviction was affirmed on appeal. *United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968), *cert. denied*, 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). A motion for a new trial on the basis of newly discovered evidence was denied following an extended evidentiary hearing, *United States v. Wolfson*, 297 F.Supp. 881 (S.D.N.Y.1968), and the denial of the motion was affirmed on appeal, *United States v. Wolfson*, 413 F.2d 804 (2d Cir. 1969).

In 1970, Wolfson filed a civil suit in the Middle District of Florida against the Appellees. The one-count complaint purported to state an implied, private cause of action under the federal securities laws. As a result of a series of motions by the Appellees, Wolfson filed his third amended complaint, which the district court described as follows:

> The plaintiff's third amended complaint sets forth four counts. Although it alleges a plethora of named defendants, there are only two real defendants in this case: (1) Reynolds & Company (hereinafter "Reynolds"), a New York partnership which engages in the securities brokerage business, and (2) the estate of John Morley, who prior to his death acted as the plaintiff's stockbroker for a number of years. Essentially, it is the actions of John Morley which underlie all of the plaintiff's claims.

> Count I of the third amended complaint purports to state a private, implied right-of-action arising under the Securities Exchange Act of 1934 and certain rules and regulations of the Securities and Exchange Commission (hereinafter "SEC"). This count alleges in pertinent part that (1) beginning in 1943, John Morley acted as the stockbroker for the plaintiff Wolfson and his business associates; (2) that prior to June 1963 Morley was

employed by the brokerage firm of A. M. Kidder & Company (hereinafter "Kidder"); (3) that after June of 1963 Morley was employed by the defendant Reynolds; (4) that at all times during their broker/customer relationship Morley (and, vicariously, the defendant Reynolds) owed the plaintiff a duty of care by virtue of (a) a series of signed agreements known as "broker/customer" agreements, setting forth certain terms and conditions of the relationship, and (b) Rule 405 of the New York Stock Exchange, the terms of which are fully set forth hereinafter; (5) that in connection with certain sales by the plaintiff of his capital stock in [Continental], the duty of care enumerated in item (4) *supra* was "recklessly disregard[ed]"; (6) that as a proximate result of (5) the plaintiff was indicted and convicted in the United States District Court for the Southern District of New York on September 29, 1967, for violating section 5 of the Securities Act of 1933 [15 U.S.C. § 77e (1970)]; (7) that as a further proximate result of (5) the plaintiff has been joined as a party defendant in four civil suits brought in Kentucky and New York by shareholders of Continental claiming damages in excess of two million dollars; and (8) that the plaintiff has, as a result of his criminal conviction, sustained certain specified damages.  Count I admits that prior to June of 1963 the defendant Morley was employed not by the defendant Reynolds but by Kidder, but this count also alleges that Reynolds succeeded to the liabilities of Kidder when it acquired certain of Kidder's assets in 1963.

Count II also purports to state an implied private claim under the Securities Exchange Act of 1934.  It realleges much of Count I verbatim, but by its terms is limited to the transactions in Continental stock occurring after June of 1963—the date when Reynolds bought out Kidder's Jacksonville office and employed John Morley—and seeks to recover for those transactions in Continental stock for which Reynolds is liable as the direct employer of Morley, *i. e.*, independent from whatever liabilities Reynolds might have succeeded to when it acquired Kidder's Jacksonville assets.

Count III purports to state claims under both federal and state law, invoking the Court's pendent jurisdiction as to the latter claims.  It alleges that while acting on behalf of Kidder and the defendant Reynolds, the defendant Morley willfully and fraudulently misrepresented to the plaintiff that he could engage in the purchase and sale of stock in Continental and three other corporations without running afoul of the prohibitions of any federal or state securities laws.  Count III further alleges that the defendants' fraudulent misrepresentations proximately resulted in the criminal conviction and civil litigation previously recounted, and the damages incurred thereby.

Count IV alleges that, under state law, Wolfson is entitled to recover punitive damages for the transgressions alleged in the preceding three counts.  This count is wholly dependent upon the Court's exercise of its pendent jurisdiction, since no claim is asserted under federal law.

*Wolfson v. Baker*, 444 F.Supp. 1124, 1126–27 (M.D.Fla.1978) (footnote omitted).[1] Appellees moved to dismiss or, in the alternative, for summary judgment.  The district court denied recovery to Wolfson on all four counts of the complaint; it granted summary judgment with respect to Counts I and II, and dismissed Counts III and IV with prejudice under Fed.R.Civ.P. 12(b)(6).

With respect to Counts I and II, after carefully reviewing the record of Wolfson's criminal trial and the issues litigated therein, the district court applied the doctrine of nonmutual collateral estoppel to prevent Wolfson from denying "that, at the time of the stock transactions alleged in the indictment upon which he was tried and convicted, he knew that the securities laws re-

---

1. Wolfson admits in his brief to this Court that the district court's summary of the basis of his complaint is accurate.

quired that he file a registration statement before engaging in those transactions." 444 F.Supp. at 1128. The trial court determined that Wolfson had a full and fair opportunity to litigate the issue of his knowledge, that the issue of his knowledge had been directly determined in the criminal trial, and that no injustice would result from the application of collateral estoppel in this case. After treating the threshold issue of the applicability of nonmutual collateral estoppel, the district court turned to the effect of its application of collateral estoppel on the merits of Wolfson's case. It denied Appellees' motion to dismiss Counts I and II under Rule 12(b)(6), holding that an implied private right of action exists under NYSE Rule 405, and that "reckless disregard of the duty imposed by Rule 405 is sufficient to sustain a cause of action for a breach of that rule." *Id.* at 1134. The district court, however, granted summary judgment for Appellees on Counts I and II on the basis that Wolfson's knowledge that a registration statement was required for his transactions in Continental stock precluded recovery on two alternative grounds. First, noting that a critical factor in determining whether a private right of action exists is whether the plaintiff is a member of the class which the laws in question were designed to protect, the district court held that Rule 405 protects innocent investors and that Wolfson was unable to bring himself within that class. Second, the court held that the Appellees had a meritorious in pari delicto defense to the Rule 405 claim. With respect to Count III, which asserted both federal and state claims based on fraudulent misrepresentations which allegedly induced Wolfson to sell his stock in Continental and three other corporations, the district court granted the Appellees' motion to dismiss under Rule 12(b)(6) on the basis that the complaint alleged no actual injury directly related to the sale of stock in corporations other than Continental. As an alternative ground for the dismissal of the state claim in Count III, the district court noted its discretionary power to dismiss the entirely pendent state claim in the absence of a surviving federal claim. With respect

to Count IV of the complaint, which relied wholly on pendant jurisdiction, the district court granted the motion to dismiss.

Wolfson asserts four points of error on appeal: (1) the district court erred in applying the doctrine of nonmutual collateral estoppel to establish Wolfson's knowledge of the illegality of his sales of Continental stock; (2) the district court erred in holding that Wolfson's claim was barred by the doctrine of in pari delicto; (3) the district court erred in dismissing Count III of the complaint; and (4) the district court erred in denying discovery to Wolfson.

After a careful consideration of the issues raised on appeal, we affirm the judgment of the district court.

*Collateral Estoppel*

The threshold question in this case is whether the district court properly invoked the doctrine of nonmutual collateral estoppel to establish Wolfson's knowledge that a registration statement was required for his sales of Continental stock. Wolfson argues that the district judge erred in applying collateral estoppel because (1) a criminal conviction cannot work an estoppel in a subsequent civil case; (2) mutuality of estoppel is required; (3) Wolfson's knowledge of the illegality of the sales of Continental stock cannot be inferred from the jury verdict in the criminal trial; and (4) the application of collateral estoppel in this case would result in an injustice. We disagree.

■ The Supreme Court and this court have held that the general doctrine of collateral estoppel, which bars relitigation of an issue actually and necessarily decided in a prior action, *see, e. g.,* 1B J. Moore, Federal Practice ¶ 0.441 (2d ed. 1974), is "as applicable to the decisions of criminal courts as to those of civil jurisdiction." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), quoting *Frank v. Mangum,* 237 U.S. 309, 334, 35 S.Ct. 582, 589, 59 L.Ed. 969 (1915); *Willard v. United States,* 422 F.2d 810 (5th Cir.), *cert. denied,* 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970); *Breeland*

*v. Security Insurance Co.*, 421 F.2d 918, 921–23 (5th Cir. 1969); *Tomlinson v. Lefkowitz*, 334 F.2d 262, 264–65 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). See also *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 157, 83 S.Ct. 554, 561, 9 L.Ed.2d 644 (1963); *Cardillo v. Zyla*, 486 F.2d 473 (1st Cir. 1973); *Metros v. United States District Court*, 441 F.2d 313 (10th Cir. 1970).[2]

██ In assessing whether the doctrine of collateral estoppel applies in the later action, the proper inquiry is whether the issue for which estoppel is sought was "distinctly put in issue and directly determined" in the criminal action. *Emich Motors*, 340 U.S. at 569, 71 S.Ct. at 414. When the criminal conviction was based on a jury verdict of guilty, "issues which were essential to the verdict must be regarded as having been determined by the judgment." *Id.* The district court, therefore, reviewed the record of the criminal litigation in order to determine whether Wolfson's knowledge of the registration requirement for the Continental stock was essential to the jury's verdict. It described the criminal trial as follows:

The indictment upon which Wolfson was tried and convicted contained nineteen counts. Count One alleged that Wolfson had conspired with various other persons to violate sections 5 and 24 of the Securities Act of 1933, 15 U.S.C. §§ 77e and 77x (1970). Counts Two through Nineteen alleged substantive violations of the same statutes in connection with eighteen specified sales of large blocks of stock in Continental Enterprises, Inc., allegedly executed at Wolfson's direction between October 5, 1961, and January 9, 1962. Succinctly stated, the gravamen of the government's case was that Wolfson's (and his close associates') holdings in Con-

tinental stock were substantial enough to require the filing of a registration statement with the SEC as a condition precedent to Wolfson's sale of his Continental stock in such large quantities during such a short period of time. It was undisputed that the sales of stock in question were not accompanied by any registration statement. As a predicate for Wolfson's criminal liability, the terms of 15 U.S.C. § 77x (1970) required that the government prove—beyond a reasonable doubt, of course—that Wolfson's failure to file the requisite documents with the SEC was a willful act on Wolfson's part.

Much of the government's case against Wolfson rested on undisputed facts. No one denied that the alleged sales of Continental stock had been made. In fact, no one seriously challenged the government's assertion that the sales in question ran afoul of the securities laws due to the lack of an accompanying registration with the SEC. Wolfson's defense focused almost entirely upon the willfulness element of the crimes alleged—briefly put, Wolfson claimed ignorance. He maintained that while, perhaps, technical violations of the law had occurred, he had had no knowledge of any illegality in connection with the Continental stock sales.

The issue of whether Wolfson actually knew that his sales of Continental stock were legally deficient was, by far, the most hotly contested issue at Wolfson's trial. During its case-in-chief, the government called a number of securities brokers through whom Wolfson (or one of his associates) had sold various blocks of Continental stock. In the case of most of these brokers, Wolfson's sell orders had

---

**2.** Wolfson asserts that a party's attempt to obtain or retain the profits of the illegal conduct for which he was convicted is a prerequisite for the invocation of collateral estoppel. While such a rule may obtain in other jurisdictions, *see generally* 46 Am.Jur.2d *Judgments* § 618 (1969 & Supp. 1979), and at least one of our prior cases appears to have relied on the "attempt to benefit from the crime" rationale,

*see Hardin v. Aetna Casualty & Surety Co.*, 384 F.2d 718, 719 (5th Cir. 1967), *cert. denied*, 391 U.S. 971, 88 S.Ct. 2047, 20 L.Ed.2d 886 (1968), it is clear from our examination of the cases cited above that, in this Circuit, the use of a prior conviction to collaterally estop a party in a subsequent action does not depend upon an attempt by that party to benefit from the crime.

been relatively small. Defense counsel cross-examined each broker thoroughly on the subject of whether he had discussed the registration question with Wolfson or one of his subordinates, and none could recall having had any such discussions. With only one exception, the defense made no attack on the credibility of the brokers' testimony.

The one exception was the testimony of John Morley. During the time period alleged in the indictment, Morley had been a registered broker with the firm of A.M. Kidder & Company, a brokerage house with its principal offices in New York City. Morley was with Kidder's Jacksonville office, and had in fact been one of Wolfson's stockbrokers for a number of years prior to the allegedly illegal sales of Continental stock. It was with Morley that Wolfson placed the most substantial sell orders for his shares of Continental.

The defense strategy was to depict Morley as the one person who should have recognized the registration problems in the Continental transactions and should have informed Wolfson of these problems. In furtherance of this strategy, the defense position was that while Morley knew of or should have known of the applicable registration requirements, he neglected to call the requirements to Wolfson's attention for fear of aborting the transactions and losing the rather substantial commissions which Wolfson's Continental sales had generated.

After the government had rested its case, the defense continued its strategy of casting doubt upon whether Wolfson had known the illegal nature of what he was doing. In this connection, the crucial witness was Wolfson himself. After first calling several stockbrokers, an investment consultant, and a multitude of character witnesses, Wolfson took the stand and flatly denied any knowledge of the

legal shortcomings of his Continental sales. . . .

When the defense had rested, the government succeeded in introducing a damning piece of rebuttal evidence. The government produced an internal memorandum, dated in 1950, from the files of the SEC. The memorandum tended to indicate that at that time Wolfson had met with SEC officials and had discussed the federal registration requirements pertaining to a transaction substantially similar to Wolfson's Continental sales. The memorandum was introduced, of course, to show that Wolfson was well aware of the legal restrictions on his unregistered sale of the Continental stock.

Not surprisingly, the closing arguments of counsel focused heavily on the issue of Wolfson's knowledge of the securities laws which he had allegedly violated. Defense counsel skillfully summarized the evidence in the case which tended to show Wolfson's ignorance, and in fact devoted the bulk of his argument to this very subject. Subsequent to the closing arguments, the trial court instructed the jury at some length, and included specific and comprehensive instructions on the knowledge/willfulness issue. Eventually, the jury returned a guilty verdict against Wolfson as to all nineteen counts of the indictment.

444 F.Supp. at 1128–30. We think that the district court's description of the criminal trial is accurate. In light of the willfulness requirement of 15 U.S.C. § 77x, the indictment, the evidence and arguments of counsel at trial, and the trial court's instructions to the jury,[3] we are convinced that the district court properly concluded that "Wolfson's knowledge of the registration requirements . . . was an exhaustively litigated issue, and that the jury's verdict against Wolfson necessarily rests upon a finding that Wolfson's claims of ignorance were insufficient to create a reasonable

---

**3.** We note that the trial court repeatedly charged the jury that they were required to find beyond a reasonable doubt, as an essential element of the crime, that Wolfson knew that a registration statement was required for his sales of Continental stock.

doubt of his criminal culpability." 444 F.Supp. at 1130.[4]

■ Wolfson next contends that mutuality of estoppel is required in order for a prior criminal conviction to be given collateral estoppel effect in a subsequent civil case. We disagree. Ten years ago, in *Rachal v. Hill*, 435 F.2d 59 (5th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971), we noted the modern trend toward rejection of the mutuality of estoppel rule, and rejected it in the context of a civil case in which collateral estoppel was sought on the basis of a prior civil judgment. Since *Rachal*, the Supreme Court has adopted our position on that issue in *Blonder-Tongue v. University Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (defensive collateral estoppel), and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (offensive collateral estoppel). Though our research does not disclose any case in which this Circuit has eliminated the mutuality requirement in the context of a civil case in which collateral estoppel is sought on the basis of a prior criminal conviction, we fail to perceive any reason why the rejection of the mutuality rule in a context in which both the prior and subsequent actions were civil should not apply equally when the prior action was criminal.[5]

Wolfson correctly contends that a party against whom an adverse determination has been made on an issue in a prior action will not invariably be prevented from relitigating that issue. The Supreme Court and this court have held that nonmutual collateral estoppel will be applied only where there was a "full and fair" opportunity in the first action to litigate the issue for which collateral estoppel is sought, *Parklane Ho-*

*siery*, 439 U.S. at 326–33, 99 S.Ct. at 648–52; *Blonder-Tongue*, 402 U.S. at 332–33, 91 S.Ct. at 1444–45; *Johnson v. United States*, 576 F.2d 606, 614–15 (5th Cir. 1978); *Rachal v. Hill*, 435 F.2d at 62. In addition, we have said that nonmutual collateral estoppel will not be invoked if "some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." *Rachal v. Hill*, 435 F.2d at 63, quoting *Bruszewski v. United States*, 181 F.2d 419, 421 (3rd Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). *See also Johnson v. United States*, 576 F.2d at 614.

It is beyond dispute that Wolfson had a full and fair opportunity to litigate the issue whether he knew of the registration requirement for his sale of Continental stock in the sense that he was motivated by the serious criminal charges to "litigate and to litigate to the finish," *Blonder-Tongue*, 402 U.S. at 332, 91 S.Ct. at 1444, and that the full array of procedural protection was available to him there. Instead, he argues that he was denied a full and fair opportunity to litigate the issue of his knowledge and that application of collateral estoppel would result in an injustice because, at the criminal trial, the prosecution allegedly withheld certain material exculpatory evidence from him and because the prosecution's key witness against him, John Morley, allegedly committed perjury as part of a conspiracy between Morley and other brokers, the object of which was to convict Wolfson and to escape criminal and civil liability for themselves. Even if we assume that Wolfson's allegations of perjury and withholding of exculpatory evidence are true, we do not think that they are suffi-

---

4. In *United States v. Wolfson*, 405 F.2d at 781–82, the Second Circuit, in affirming Wolfson's conviction, expressed doubts with respect to the validity of Wolfson's defense that he "operated at a level of corporate finance far above such 'details' as the securities laws [with respect to] whether a particular stock must be registered." We reject Wolfson's contention that the dictum in that opinion concerning Wolfson's defense constitutes a holding that knowledge of the registration requirement is

not an essential element of the crime for which Wolfson was convicted.

5. Other circuits have abandoned the mutuality requirement in civil cases in which invocation of collateral estoppel was sought on the basis of a prior criminal conviction. *See, e. g., United States v. Frank*, 494 F.2d 145, 160 (2d Cir.), *cert. denied*, 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52 (1974); *Cardillo v. Zyla*, 486 F.2d 473 (1st Cir. 1973).

cient to defeat the invocation of collateral estoppel in this case. In view of the fact that the record on its face does not disclose the lack of a full and fair opportunity for Wolfson to litigate the knowledge issue, and the fact that Wolfson has an opportunity to collaterally attack his conviction in a coram nobis proceeding [6] in New York, where his criminal trial was held,[7] we fail to discern any injustice in refusing to allow relitigation of the knowledge issue here. Cf. Brazzell v. Adams, 493 F.2d 489 (5th Cir. 1974) ("[w]e are satisfied that the general rule should be followed, especially where, as here, the party barred by collateral estoppel has the option of challenging the earlier adjudication through a habeas corpus petition.").[8] We therefore hold that the district court properly invoked the doctrine of nonmutual collateral estoppel to establish Wolfson's knowledge that a registration statement was required for his sales of Continental stock.

### The Merits

After addressing the threshold question of the applicability of the doctrine of collateral estoppel and determining that Wolfson knew that his sales of unregistered Continental stock were illegal, the district court considered the effect of Wolfson's knowledge on the merits of his case. First, the district court held that an implied federal right of action exists for a breach of NYSE Rule 405,[9] and that "reckless disregard" of the duty imposed by the rule is sufficient to sustain a cause of action for the breach of the rule. Second, the district court held that Wolfson's knowledge of the illegality of his sales of Continental stock barred him from recovery on his Rule 405 claim. This holding was based on two alternative grounds: (1) since Wolfson could not bring himself within the class of innocent investors for whose benefit Rule 405 was designed, allowing him to maintain a private cause of action would be inappropriate under Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); and (2) the Appellees had a meritorious in pari delicto defense which barred Wolfson's claim.

Because we hold that the district court properly applied the in pari delicto defense to bar Wolfson's claim under the circumstances of this case, we need not and do not

---

**6.** Since Wolfson has served his sentence for the criminal conviction, he is no longer "in custody," and coram nobis is the appropriate remedial avenue for his claims. See Carbo v. United States, 581 F.2d 91 (5th Cir. 1978).

**7.** We note that Wolfson's first petition for writ of error coram nobis was denied by Judge Palmieri of the Southern District of New York, Unpublished Memorandum Opinion, Dkt. No. 66 Crim. 720 (July 26, 1976), and the denial of the petition was affirmed by the Second Circuit, United States v. Wolfson, 558 F.2d 59 (2d Cir. 1977). Subsequently, Wolfson filed a second coram nobis petition, which raised, inter alia, the same issues with respect to the criminal trial that Wolfson has presented here. That petition was denied by Judge Gagliardi of the Southern District of New York, Unpublished Memorandum Opinion, Dkt. No. 66 Civ. 720 (Feb. 20, 1980), and Wolfson's appeal from the denial of the petition is currently pending before the Second Circuit.

**8.** The First Circuit has invoked nonmutual collateral estoppel in the context of a suit brought by a convicted defendant based on a claim that the defendants in the civil case committed perjury at his criminal trial. Cardillo v. Zyla, 486 F.2d 493 (1st Cir. 1973).

**9.** NYSE Rule 405, often called the "Know Your Customer" rule, provides in pertinent part:

Every member organization is required through a general partner or an officer who is a holder of voting stock to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

(2) Supervise diligently all accounts handled by registered representatives of the organization.

(3) Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer. . . . The member, general partner or officer approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is a part of the permanent records of his office or organization.

decide whether an implied federal cause of action exists for a breach of NYSE Rule 405.[10]

In holding that the defense of in pari delicto barred recovery by Wolfson, the district court relied on two cases from our circuit, *Kuehnert v. Texstar Corp.*, 412 F.2d 700 (5th Cir. 1969), and *Gordon v. duPont Glore Forgan, Inc.*, 487 F.2d 1260 (5th Cir. 1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974). In *Kuehnert*, we held that the in pari delicto defense is available to defendants under certain circumstances in private suits for violation of the securities laws. There the plaintiff, a "tippee," brought suit to recover under Rule 10b–5 from a corporation whose stock he had purchased and from an insider who had allegedly given him misleading information. Characterizing the plaintiff as "in fact a dupe, but [one] who believes he is a tippee with a duty to disclose, and who endeavors to take wrongful advantage of his tip," 412 F.2d at 703, we concluded that the plaintiff's illegal conduct placed him in pari delicto with the insider. Having decided that the plaintiff's conduct made the defense of in pari delicto available, we held that the application of the defense in a particular case rests in the discretion of the district court, and that "[the] question must be one of policy: which decision will have the better consequences in promoting the objective of the securities laws by increasing the protection to be afforded the investing public." 412 F.2d at 704. Reasoning that "no sufficient public interest [exists] when the only question is one of accounting between joint conspirators," *id.* at 703, and that "[i]f a tippee can sue he has, in effect, an enforceable warranty that secret information is true," *id.* at 705, we held that the district court properly allowed the in pari delicto defense under the circumstances of that case.

Subsequently, in *Gordon*, we denied recovery to a group of investors who sued their broker under NYSE Rules 431 and 432 for failure to notify them that their accounts had become undermargined. There, we reasoned that even if a private right of action exists for breach of Rules 431 and 432, because it was undisputed that the plaintiffs knew that their accounts had become undermargined and that they had acquiesced in the situation, the investors were in pari delicto with the brokers and should not be allowed to recover for policy reasons. We rejected "an approach that so unilaterally favors the stock purchaser at the expense of his broker," 487 F.2d at 1263, citing Judge Friendly's admonition in *Pearlstein v. Scudder & German*, 429 F.2d 1136, 1148 (2d Cir. 1970) (Friendly, J., dissenting), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), that

> [a]ny deterrent effect of threatened liability on the broker may well be more than offset by the inducement to violations inherent in the prospect of a free ride for the customer who . . . is placed in the enviable position of "heads-I-win tails-you-lose."

Under the principles set out in *Kuehnert* and *Gordon*, we think the district court was correct in barring recovery by Wolfson. Because Wolfson knew that his sales of Continental stock ran afoul of the securities laws, he is plainly in pari delicto with the Appellees who, he contends, had a duty to tell him that the sales were illegal. Even if Wolfson's allegations with respect to the Appellees' duties and conduct are taken as true, since Wolfson was the seller of the securities and recognized the illegality of the sales, the fault of the parties was "mutual, simultaneous, and relatively equal." *Woolf v. S. D. Cohn & Co.*, 515 F.2d 591, 603 (5th Cir. 1975), *vacated and remanded on other grounds*, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976). In light of the policy reasons articulated in *Gordon* for denying recovery under closely analogous circumstances, and the fact that Wolfson has failed to articulate any reason why the investing public would be better served by a rule which would allow him to recover against his brokers, we think the

---

**10.** Likewise, because we hold that the district court properly applied the in pari delicto defense, we need not address the district court's alternative reason for barring recovery.

district court properly exercised its discretion in applying the pari delicto defense in this case.

## Count III of the Complaint

■ Wolfson's third contention is that the district court incorrectly determined that Count III of the complaint, which stated, inter alia, a federal claim for fraudulent misrepresentations which allegedly induced Wolfson to sell shares in Continental and three other corporations, failed to allege any injury directly relating to the sales of stock in any corporation other than Continental.[11] We agree with the district judge that, although Count III purported to state a claim with respect to Wolfson's sales of stock in corporations other than Continental, his allegations of damages relate only to his sales of Continental. In our view, the district court properly held that the alleged injuries flowed from Wolfson's criminal conviction and from his defense to four civil suits, all of which involved only his Continental sales. In view of the fact that the Continental sales appear to be the lynchpin of Wolfson's injuries, and the fact that Wolfson was afforded an adequate opportunity to clarify the connection between his alleged injuries and his sales of stocks in corporations other than Continental,[12] we think the district court properly concluded that Wolfson alleged no injuries with respect to shares of stock in corporations other than Continental. Therefore, since Wolfson could prove no set of facts entitling him to relief, the district court properly dismissed Count III of the complaint.

## Discovery

■ Wolfson's fourth contention is that he was improperly denied discovery. He argues that if discovery had been allowed, he would have been able to uncover information sufficient to preclude the invocation of collateral estoppel, at least at the summary judgment stage. We find no merit in Wolfson's contention. Because we held above that the district court properly invoked the doctrine of collateral estoppel even if Wolfson's allegations of perjury and withholding of material exculpatory evidence are true, we fail to see how discovery could have aided Wolfson in any way. Therefore, even assuming *arguendo* that the district court erred in limiting discovery, that error does not provide a ground for reversal. *See, e. g., Simmons v. Amerada Hess Corp.*, 619 F.2d 440 (5th Cir., 1980).

Finding no reversible error, we affirm the judgment of the district court.

AFFIRMED.

---

**11.** The district court dismissed Count III because (1) Wolfson was barred from recovery with respect to his transactions in Continental stock for the reasons justifying summary judgment on Counts I and II; (2) Count III failed to allege any injuries directly relating to Wolfson's sales of stock in corporations other than Continental; and (3) the state claim in Count III relied solely on pendant jurisdiction, and no federal claim remained. Our conclusions concerning collateral estoppel and the in pari delicto defense with respect to Counts I and II of the complaint support the district court's rationale for dismissing the portion of Count III which alleged injuries from transactions in Continental stock. Wolfson does not allege error with respect to the dismissal of his state claim. His contention with respect to Count III concerns only his sales of stock in corporations other than Continental.

**12.** The record reveals that the Appellees moved three times for a dismissal or, in the alternative, for summary judgment or a more definite statement. Each motion argued that Wolfson had failed to allege any injuries flowing from his sale of stock in corporations other than Continental. Though Wolfson amended his complaint three times, he made no attempt to clarify the connection between his injuries and his sales of stock in corporations other than Continental.