730 F.2d 1319
 Fed. Sec. L. Rep. P 91,424
Carl F. BERNER, Charles Bruner, Dennis T. Demetre, Lawrence
Epstein, Barry S. Glass, Herbert Greenbaum, Robert
M. Jacobs, Arnold R. Keiles, Harry
Mittleman and Gary L. Nobel,
Plaintiffs-Appellants,
v.
Charles P. LAZZARO; Bateman Eichler, Hill Richards
Incorporated, Leslie L. Neadeau, and T.O.N.M. Oil
& Gas Exploration Corporation,
Defendants-Appellees.
 No. 83-1972.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 15, 1984.
Decided April 13, 1984.
As Amended July 23, 1984.
 
 Larry Lavoie, Asst. U.S. Atty., Daniel J. Kraus, S.E.C., Washington, D.C., Geoffrey P. Knudsen, Boone, Knudsen & Martin, P.C., San Francisco, Cal., for plaintiffs-appellants.
 Phillip L. Bosl, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, SCHROEDER, and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 Appellants seek a reversal of the judgment of the district court granting appellees' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b).[1] The trial court determined that the application of the in pari delicto doctrine barred appellants from any right to recovery. Because we feel that securities professionals and corporate officers who have allegedly engaged in fraud should not be permitted to invoke the in pari delicto doctrine to shield themselves from the consequences of their fraudulent misrepresentation, we reverse and remand for a trial on the merits of appellants' claims.
 
 
 2
 For purposes of reviewing the lower court's dismissal of appellant's action for failure to state a claim, we must accept the facts alleged in the complaint as true. California Dump Truck Owners Assn., Inc. v. Associated General Contractors of America, 562 F.2d 607, 614 (9th Cir.1977).
 
 PERTINENT FACTS
 
 3
 Appellant's complaint alleges that Charles Lazzaro, a registered representative of the broker dealer firm Bateman Eichler, Hill Richards, Inc., and Leslie Neadeau, president of T.O.N.M. Oil and Gas Exploration Corporation, conspired to manipulate the market price of T.O.N.M. stock by disseminating false information on the pretext that it was inside information.
 
 
 4
 T.O.N.M. common stock is traded over the counter through the National Association of Securities Dealers System. Appellants purchased T.O.N.M. stock through Lazzaro and other brokers "on the premise" that Lazzaro was privy to "certain information not otherwise available to the general public." Lazzaro allegedly induced appellants to purchase T.O.N.M. stock by representing to them that he knew T.O.N.M.'s president personally and by telling them the following material nonpublic information about T.O.N.M.: it had acquired the rights to a large gold deposit discovered in Surinam; it was about to enter into a joint venture agreement with a large mining company to mine the gold; it would issue to its shareholders stock in its subsidiary without additional consideration; and as a result of these developments the value of T.O.N.M. stock would increase dramatically. He told appellants that the price of T.O.N.M.'s stock would increase from $1.50 per share to between $10 and $15 per share upon publication of the information. Appellants sought confirmation of the foregoing information from Neadeau. He would neither confirm nor deny it. Instead he said that such information was "not public knowledge" and that Lazzaro was very "trustworthy and a good man."
 
 
 5
 The complaint alleges that these false representations were made with knowledge of their falsity with the intention of creating an artificially high demand and price for such stock. The representations are alleged to be false or materially incomplete. Appellants purchased T.O.N.M. stock in reliance on the defendants' misrepresentations and as a result of their unlawful scheme.
 
 
 6
 The price of the stock rose to $7 per share in the latter part of 1980 as a result of the defendants' manipulation. In the second quarter of 1981, the stock fell sharply to less than $1 per share. Thereafter, appellants sold their T.O.N.M. stock at prices substantially below those at which they purchased the stock.
 
 
 7
 The district court dismissed appellants' damage claims under Sec. 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder on the ground that appellants were in pari delicto with Lazzaro and Neadeau. The court explained that appellants had admitted in their complaint "that they had acted on insider information and therefore were tippees." "If the allegations of the complaint are true," the court stated, "both plaintiffs and defendants violated the particular statutory provision under which recovery is sought." The district court concluded that under such circumstances the in pari delicto doctrine automatically barred plaintiffs' claims without balancing relative fault.DISCUSSION
 
 
 8
 This court has not previously addressed the question of the application of the defense of in pari delicto to a private action by an investor to recover losses caused by the fraudulent misrepresentations of a broker concerning alleged insider information.
 
 
 9
 We begin our discussion by noting that in pari delicto is a common law doctrine of "complex scope, contents, and effects." Perma Life Mufflers, Inc. v. International Parts Co., 392 U.S. 134, 140, 88 S.Ct. 1981, 1985, 20 L.Ed.2d 982 (1968). Although it literally means "of equal fault", id. at 138, 88 S.Ct. at 1984, there is a "lack of agreement on a definition of the term 'in pari delicto', as well as a disagreement, perhaps, on the standards that should govern the use of the defense to which the term is properly applied." Id. at 153, 88 S.Ct. at 1992 (Harlan, J. concurring and dissenting).
 
 
 10
 Historically, the doctrine of in pari delicto has been used to protect the integrity of the court where it was called upon to decide between two wrongdoers. See, Limitations on Defenses Under 10(b): In Pari Delicto and Unclean Hands, 5 U.Richmond L.Rev. 251, 257 (1971). In pari delicto has traditionally been applied in the interest of society, rather than that of individual litigants. 3 Pomeroy, Equity Jurisprudence, Sec. 940-941 (5th ed. 1941). Thus, where private suits are encouraged to further specific public policies, the question has often arisen concerning whether the doctrine of in pari delicto should be limited in order to advance societal interests. Fisher, Tipsters, Tippees and the Doctrine of In Pari Delicto, 50 B.U.L.Rev. 87, 93 (1970). Some courts have refused to allow the interposition of the defense when the defendant's misconduct exceeds that of the plaintiff, or when the defense would be detrimental to the public interest. 3 Pomeroy, Sec. 941.
 
 
 11
 In Mallis v. Bankers Trust Co., 615 F.2d 68, 76 (2nd Cir.1980), cert. denied, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981), the court noted that "[t]he Supreme Court has not displayed much enthusiasm for the in pari delicto defense to claims for violation of federal law even when the plaintiff's violation was of the same statute under which he sought relief. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134 [88 S.Ct. 1981, 20 L.Ed.2d 982] (1968)."
 
 
 12
 In Perma Life the majority commented that "[w]e have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes". Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968). Public policy encourages private actions as enforcement devices for the public interest, even though a windfall may accrue to a wrongdoing plaintiff. Murray, Securities Regulation--In Pari Delicto as a Bar to Private Antifraud Action by Tippee Against Tipper, 43 Mo.L.Rev. 378, 381 (1978).
 
 
 13
 The Supreme Court has not considered the applicability of the in pari delicto defense as an absolute bar to private actions under the federal securities laws. The Court has reviewed the use of this defense in private antitrust actions. In Perma Life, 392 U.S. at 138, 88 S.Ct. at 1984, a majority of the court held that under the facts before it there was no basis for applying the doctrine of in pari delicto in an antitrust action. This court confronted the impact of Perma Life on antitrust cases in Javelin Corp. v. Uniroyal, Inc., 546 F.2d 276 (9th Cir.1976), cert. denied, 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977); Accord, THI Hawaii v. First Commerce Financial Corp., 627 F.2d 991 (9th Cir.1980).
 
 
 14
 In Javelin, we stated that a plaintiff is not barred from recovering because of the equitable defense of in pari delicto unless "the illegal conspiracy constituting the antitrust violation would not have been formed but for the plaintiff's participation." Javelin, 546 F.2d at 279. In formulating this test, we noted our agreement with the approach suggested by Justice White in Perma Life. Javelin, 546 F.2d at 279 n. 3. There, Justice White stated:I would deny recovery where plaintiff and defendant bear substantially equal responsibility for the injury resulting to one of them but permit recovery in favor of the one less responsible where one is more responsible than the other.
 
 
 15
 Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 146-47, 88 S.Ct. 1981, 1988-89, 20 L.Ed.2d 982 (White, J. concurring).
 
 
 16
 Thus, in private antitrust actions, it is the law of this circuit that the doctrine of in pari delicto does not apply where the facts show that the plaintiff is less than co-equally responsible for his injury. We see no valid reason for creating a different rule for private actions initiated under the federal securities laws.
 
 
 17
 In the matter before us, the complaint alleges that the fraudulent scheme was originated by the broker and his coconspirators to manipulate the market price of T.O.N.M. stock for their financial benefit. The complaint further provides that the investors acted in reliance on these representations without knowledge of the true facts. The allegations of the complaint, if proved, would demonstrate that the investors could not have been equally responsible for the injury they suffered as a result of this fraudulent scheme. Therefore, the complaint should not have been dismissed on the basis of in pari delicto.
 
 
 18
 The purpose of the Securities Exchange Act of 1934 is to compel full and fair disclosure in the issuance of securities so that the investors will be adequately protected. See U.S. v. Carman, 577 F.2d 556, 564 (9th Cir.1978) [discussing 1933 Act]. The legislative history of the enactment of the 1934 Act clearly indicates that the "various abuses ... and the inadequacy of self-regulation by the stock exchanges" precipitated the need for the legislation. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 204, 96 S.Ct. 1375, 1386, 47 L.Ed.2d 668 (1976). "[P]revention of frauds against investors was surely a key part of [the purpose behind the securities act], but so was the effort to achieve a high standard of business ethics ... in every facet of the securities industry". U.S. v. Naftalin, 441 U.S. 768, 775, 99 S.Ct. 2077, 2082, 60 L.Ed.2d 624 (1979).
 
 
 19
 The major objective of the federal securities law is undoubtedly to provide protection to the investing public. See SEC v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963). Clearly, at the heart of congressional concern in enacting the statutes were the abuses committed within the industry, specifically by insiders and brokers.
 
 
 20
 The Supreme Court has ruled that where the clear legislative purpose of an act or statute would be hindered rather than aided by a judicial sanction prohibiting a right of action by a plaintiff, such sanctions shall not be upheld. In A.C. Frost & Co. v. Coeur d'Alene Mines Co., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941), a purchaser of unregistered shares of stock sought to enforce a contract of sale through application of statutory sanctions pursuant to the Securities Exchange Act. The Supreme Court rejected the issuer's defense that the contract be found null and void due to the unlawful misconduct of both parties in negotiating an illegal contract, stating that to deny relief because of the illegality would "seriously hinder rather than aid the real purpose of the statute." Id. at 43, 61 S.Ct. at 417. Thus, enforcement of the contract was permitted because denial would have encouraged violation of the act and would have defeated its intent.
 
 
 21
 The rationale of the Supreme Court's decision in Frost applies to cases dealing with Section 10 violations brought by investors against defrauding insiders. Section 10 of the act was specifically created to proscribe fraudulent misrepresentations and concealment of material fact by brokers and dealers. Application of the defense in favor of BEHR and Lazzaro and in favor of T.O.N.M. and Neadeau would hinder the purpose and intent of the section. The resources of the Securities Exchange Commission are adequate to prosecute only the most flagrant abuses. See A. Bromburg, Securities Law: Fraud-SEC Rule 10b-5 Secs. 10.1-10.3 (1967). To this end, private actions brought by investors have long been viewed as a necessary supplement to SEC enforcement actions. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975). Even in situations where an investor is not free from blame, private damage actions under these antifraud and antimanipulation provisions serve not only to compensate injured investors, but also to deter fraud and manipulation by exposing those contemplating unlawful conduct to the threat of private damage liability.[2] "Public confidence in an honest securities marketplace is endangered whenever there are fraudulent activities, even if the accounting of only one investor is involved." Harter, Rule 10b-5: The In Pari Delicto and Unclean Hands Defenses, 58 Cal.L.Rev. 1149, 1156 (1970).
 
 
 22
 Private actions by investors victimized by the fraudulent representations of brokers also protect other investors who were not defrauded from artificial market fluctuations. In the matter before us, appellants allege that the dissemination of false information into the securities market unjustifiably inflated the market value of T.O.N.M. stock. The stock fluctuated from approximately $1.50 a share in 1979 to a high of $7.12 in the fourth quarter of 1980 as a result of the false information. The price crashed down to $1 a share by the end of the second quarter of 1981. This activity may have caused substantial losses for those investors who purchased T.O.N.M. stock in the belief that its price reflected its true market value.
 
 
 23
 Any deterrent effect against the use of insider information through imposition of the in pari delicto defense is outweighed by the resulting adverse consequence to the market and innocent investors. The defense eliminates any incentive on the part of the injured investor to bring suit, with the result that many violations of the securities act would remain unexposed. Murray, 43 Mo.L.Rev. at 386. Such a decision would tell the corporate insider that if he releases false information which induces action on the part of a would be tippee, he need not fear private enforcement of the securities law. Id. "Without the sanction of civil liability, the insider is likely to go undetected and be left to practice his deceit again, with the incentive provided by the knowledge that he is now virtually immune to civil liability for his violation of rule 10b-5." Harter, 58 Cal.Rev. at 1158.
 
 
 24
 This result is totally incompatible with the overall aims of the securities law, and of Rule 10b-5. The possibility of private action is necessary to deter the insider-tipster from knowingly passing on false information to the investing public. See Note, Securities Regulation: Doctrines of In Pari Delicto and Unclean Hands Held to Bar 10b-5 Recovery by Tippee Against Corporate Insider, 1969 Duke L.J. 832, 839. The encouragement of this kind of litigation also serves to publicize fraudulent schemes and enables the victims to discover and seek redress for their loss. Fisher, 50 B.U.L.Rev. at 91. To allow professionals in the securities industry and corporate officers to hide behind the in pari delicto defense gives them a license to defraud the investing public with little fear of prosecution. So long as these persons disseminated false information on the pretext that it was "inside" information, they would be shielded from liability in a private civil action. The rule we adopt today will further public policy by providing greater protection for the investing public. Nathanson v. Weis, Voisin, Cannon, Inc., 325 F.Supp. 50, 52-53 (S.D.N.Y.1971).
 
 
 25
 We recognize that we have reached a result in this matter which is contrary to views expressed in Tarasi v. Pittsburgh National Bank, 555 F.2d 1152 (3rd Cir.), cert. denied, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977) and Kuehnert v. Texstar Corp., 412 F.2d 700 (5th Cir.1969). Both courts upheld orders granting summary judgment on the theory that the investors were in pari delicto because they voluntarily committed illegal acts in violation of the federal securities laws.[3] We are not persuaded by the conclusion reached in these circuits that a duped investor is equally at fault in the fraud perpetrated against him by his broker or an insider.
 
 CONCLUSION
 
 26
 We have concluded that the defense of in pari delicto is inappropriate as the sole basis for the dismissal of a complaint, in a private action under the federal securities laws, unless the alleged facts show that the investor is equally responsible for his injury. Where the pleaded facts show that the investor suffered a loss because he relied upon a broker's fraudulent misrepresentations, a cause of action has been stated which may be answered by denial or barred by pleading and proving an affirmative defense. We reject the notion that a defrauded investor is not entitled to recover damages against a broker or an insider solely because the complaint shows that the plaintiff has violated the federal securities laws. "[A]n investor does not waive or lose the shelter of the Act because he becomes to some extent involved in the illegality of the security sales." Can-Am Petroleum Company v. Beck, 331 F.2d 371, 373 (10th Cir.1964). The judgment is REVERSED.
 
 
 
 [1]
 In Footnote 8 of their opening brief, appellants challenge the district court's dismissal of their claim for violation of section 15(c) of the Exchange Act (15 U.S.C. Sec. 780(c). Appellants make no further mention of this contention. The district court correctly dismissed the Section 15(c) claim. No private right of action exists under this section. Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301, 1313-14 n. 16 (9th Cir. 1982)
 
 
 [2]
 We agree with Judge Trask's criticism of the use of the common law defenses in the securities area:
 If a limitation upon common law defenses available to a broker might in some instances allow an unscrupulous investor to recover, this consequence is balanced by the salutary effect which the threat of private suits can have in maintaining adherence to statutory commands.... Availability of common law defenses, such as in pari delicto ... serve to make this check upon abuses in the system's internal workings considerably less potent.
 Hughes v. Dempsey-Tegler & Co., Inc., 534 F.2d 156, 184 (9th Cir.) (Trask, J. concurring and dissenting), cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).
 
 
 [3]
 The courts in Tarasi and Kuehnert were both concerned that permitting a tippee to recover would give him a virtual "warranty of accuracy" on his tips, and thus that he would have no incentive to forbear from using inside information. Tarasi, 555 F.2d at 1163; Kuehnert, 412 F.2d at 705. See also In re Haven Industries, 462 F.Supp. 172 at 179-180 (1978). According to this theory, if the tip is correct, the tippee will reap his profit at the expense of the innocent investing public, and, if the tip is false, so long as he is able to sue his alleged tipster his financial loss will be covered
 However, this characterization of the tippee being placed in the position of "heads I win, tails you lose" fails where the investor must allege fraud. In Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court held that to succeed in a private cause of action under Rule 10(b)(5), a plaintiff must prove scienter. Under this rule, a purported tippee does not have a submissible case absent a showing that the tipster possessed an "intent to deceive, manipulate or defraud." Id. at 193, 96 S.Ct. at 1381. "The requirement of scienter erodes any broad 'warranty of accuracy'. The tippee is only warranted against knowing and intentional deceit." Murray, 43 Mo.L.Rev. at 384 n. 35.
 Far from being guaranteed of success, an investor who trades on inside information has violated Rule 10(b)(5) and subjects himself to potential criminal liability as well as an action by the SEC. Furthermore, if the tip merely fails to "pan out" or if the information itself proves accurate but the stock fails to move in the anticipated direction, the investor stands to lose all of his investment. Only in the situation where the investor has been deliberately defrauded will he be able to maintain a private suit in an attempt to recoup his money.