J. TRAVIS SKINNER AND BARBARA R. SKINNER v. E. F. HUTTON & COM-
PANY, INC., JOHN HUDSON, AND DONALD FONTES

No. 8314SC1171

(Filed 2 October 1984)

**Actions § 5; Corporations § 16.1— inside information from stockbrokers—losses
suffered by purchasers—doctrine of in pari delicto**
     Where defendant stockbrokers provided plaintiffs with "inside informa-
tion" that corporate take-overs of two insurance companies were imminent,
plaintiffs relied on the information and purchased stock in the companies, the
take-overs did not occur, and plaintiffs subsequently incurred financial losses
when they sold their stock, all of plaintiffs' claims were barred by the doctrine
of *in pari delicto*, since, to most effectively insure that the innocent investing
public is protected, the unscrupulous tippee was well as the tipper must be
deterred.

     Judge BECTON dissenting.

APPEAL by plaintiffs and cross appeal by defendants from
*Barnette, Judge*. Order entered 8 August 1983 in Superior Court,
DURHAM County. Heard in the Court of Appeals on 29 August
1984.

     *Haythe & Curley by Samuel T. Wyrick, III and James Ar-
thur Pope for plaintiff appellants-appellees.*

     *Manning, Fulton & Skinner by Howard E. Manning and Mi-
chael T. Medford for defendant appellees-appellants.*

BRASWELL, Judge.

Motivated by "inside information" allegedly provided by the
defendant stockbrokers that corporate "take overs" were immi-
nent, the plaintiffs purchased stock in two insurance companies.
The "take overs," however, did not occur. When the plaintiffs
subsequently sold their stock in these companies, they incurred
financial losses of approximately $47,526 in stock losses, margin
call, margin interest, and brokers' commissions.

     The plaintiffs have appealed from an order of the trial court
partially granting the defendants' G.S. 1A-1, Rule 12(b)(6), motion
to dismiss. The trial court ruled that the plaintiffs' claims, except
those relating to the recovery of commissions and margin interest
received by the defendants, were barred as a matter of law by

the doctrine of *in pari delicto.* The defendants have cross-appealed the trial court's failure to dismiss all of the plaintiffs' claims. Although their appeal is interlocutory in nature, we recognize that in order for the plaintiffs to demonstrate their entitlement to a recovery of the commissions and margin interest they will have to prove their entire case including the dismissed claims. Thus, we have decided to treat this case as if it had been allowed under certiorari and to review the parties' appeals on their merits.

The pertinent facts reveal that for their stock trading the Skinners maintained general margin accounts with the defendant E. F. Hutton and Company, Inc. The plaintiffs allege that in early 1981 the defendants Hudson and Fontes, who were registered representatives and account executives with E. F. Hutton, encouraged them to "load up" on securities in two companies they represented as take-over candidates. According to the complaint, in March and April 1981, the defendant Fontes told the plaintiff Travis Skinner that he had "inside information that corporate take-overs were imminent that would shortly drive up the price of Washington National Corporation [hereinafter WNT] and Academy Insurance Group [hereinafter ACIG] which securities were being traded either on an exchange or over the counter." Based on the advice of Hudson and Fontes that the take-overs of WNT and ACIG were definitely going to take place in the near future, the Skinners purchased 3,850 shares of WNT for $109,850.00 and bought 4,100 shares of ACIG at a cost of $81,484.00 through their margin accounts at E. F. Hutton.

The defendant Fontes informed the plaintiffs that the WNT take-over would take place by the end of May 1981. However, no take-over or price increase as represented occurred. The defendants Hudson and Fontes at first told the plaintiffs that the ACIG take-over would definitely occur by 28 July 1981. When that information proved incorrect, they stated that the take-over of ACIG would be complete by 28 August 1981. Yet on 28 August 1981, no take-over of ACIG as indicated took place. The plaintiffs also contend that on at least two occasions they could have sold a significant number of their WNT shares at a good profit, but did not due to Fontes' strong advice against selling and his representations that the WNT take-over was imminent and certain. The complaint further alleges that in order "[t]o cut their losses and

Skinner v. E. F. Hutton & Co.

free their capital by the year end, Plaintiffs sold all their holdings in WNT and ACIG in October, November and December 1981, absorbing losses of at least $47,526.84 in stock losses, brokers' commissions, margin interest, and a margin call." The plaintiffs assert that these losses are a result of their reliance, to their detriment, on the defendants Fontes' and Hudson's false representations.

This appeal comes before us from the trial court's partial granting of the defendants' G.S. 1A-1, Rule 12(b)(6), motion. This motion operates to test the legal sufficiency of the complaint. "In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E. 2d 611, 615 (1979). However, if the complaint discloses an unconditional affirmative defense which defeats the asserted claim, the motion will be granted and the action dismissed. *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E. 2d 161, 166 (1970). The defendants contend that the doctrine of *in pari delicto* is such a defense.

The overriding consideration in this case is whether the evils of inside trading are best combatted by permitting or denying the defendants the benefit of the *in pari delicto* defense. The plaintiffs argue that if the *in pari delicto* defense can effectively be used by tippers then they will be free to disseminate false "inside information" without any fear of legal recourse against them. They contend that tippers as the instigators of the fraud should not be allowed to shield themselves through such a defense. *See Berner v. Lazzaro*, 730 F. 2d 1319 (9th Cir. 1984). The defendants, on the other hand, assert that by denying the use of this defense to the tipper a "no lose" situation is created for the tippee who is equally unscrupulous. For instance, if the inside information turns out to be true, then the tippee will receive the profits from the tip. If the inside information turns out to be false, then the tippee can recover his losses by suing the tipper. *See Kuehnert v. Texstar Corp.*, 412 F. 2d 700 (5th Cir. 1969). Literally translated *in pari delicto* means "in equal fault." Black's Law Dictionary 711 (5th ed. 1979). The doctrine precludes an action based on a fraudulent, illegal, or immoral transaction to which the plaintiff was a party. Thus, where the parties are equally in the wrong, the courts will not give one party legal redress against the other, but will leave them where it has found them. 1 Am. Jur. 2d, *Ac-*

*tions* Sec. 52 (1962). The complaint on its face alleges that the plaintiffs knew that Hudson and Fontes were providing them with "inside information" concerning the professed imminent corporate take-overs. The plaintiffs further admit that they bought stock in WNT and ACIG based on this information. Therefore, if the defendants are allowed the use of the *in pari delicto* defense, the defendants' Rule 12(b)(6) motion was properly granted.

The plaintiffs argue that since the information given by the defendants Hudson and Fontes was not true inside information they were not tippees. They also argue that even if they can be considered tippees, they were not in equal fault with the defendants as required for a successful *in pari delicto* defense. Federal law has defined a "tipper" as "a person who has possession of material inside information and who makes selective disclosure of such information for trading or other personal purposes. A 'tippee' is one who receives such information from a 'tipper.' " *Tarasi v. Pittsburg National Bank*, 555 F. 2d 1152, 1154, fn. 1 (3d Cir.) *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed. 2d 451 (1977), *citing* 2 A. Bromberg, Securities Law: Fraud, S.E.C. Rule 10b-5 at 190.7 (1973). It is obvious from the complaint that the plaintiffs' purchase of the stock in WNT and ACIG was motivated by the alleged inside information related by the defendants Hudson and Fontes. For the purpose of asserting an *in pari delicto* defense, the fact that the plaintiffs believed they possessed "inside information" and took steps to profit from this knowledge in violation of the anti-"inside information" policy of the securities laws is sufficient justification for classifying them as tippees. *See Kuehnert v. Texstar Corp., supra* at 702-05.

Similarly, we feel that the plaintiffs' actions also place them in equal fault with the defendants in their attempt to undermine the objectives of the North Carolina and federal securities laws. The North Carolina securities anti-fraud provision, G.S. 78A-8, closely parallels the S.E.C. Rule 10b-5. Among the fundamental purposes underlying Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78j(b) ) and S.E.C. Rule 10b-5 are to promote free and open public securities markets, to protect the investing public from inequities in trading, and to insure that the investing public should be subject to identical market risks and allowed equal access to the rewards of participation in securities transactions. *See S.E.C. v. Texas Gulf Sulfur Co.*, 401 F. 2d 833

Skinner v. E. F. Hutton & Co.

(2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed. 2d 756 (1969). These securities laws seek to protect the innocent public who is not privy to selectively disclosed tips. In the present case, the plaintiffs have admitted that their securities purchases were made in an effort to take advantage of information not known to the investing public and if possible to profit at their expense. Surely, the plaintiffs are equally at fault with the defendants as far as taking steps which would have hurt the investing public had their attempt at fraud been successful. We fully recognize that even though a person may possess the appropriate *mens rea* for a crime, if the action he takes to carry out that intent still does not amount to a crime, then no crime has been committed. However, in determining whether the *in pari delicto* defense may be asserted, we believe that since on the face of the complaint both parties violated the spirit of the securities laws against secret disclosure, they were at equal fault, especially in view of the fact that the plaintiffs knowingly and willingly participated in what they hoped would be a profitable fraud.

We hold that the defendants may assert the *in pari delicto* defense. Although heretofore securities laws promulgated to protect against the disclosure of "inside information" have primarily been used to stop tippers, we feel that to most effectively insure that the innocent investing public is protected, the unscrupulous tippee as well as the tipper must be deterred. The concept of selective disclosure of inside information assumes the fact that the tipper will tell a tippee who will act on the information and unfairly profit by it at the public's expense. We find it persuasive that the investing public will more readily be protected if those tippees are discouraged from acting on any "inside information" illegally disclosed. It is also more probable that inside trading will stop if tippers realize the senselessness of risking criminal prosecution for disclosing "inside information" to a tippee who will not use the information. Moreover, there should be no opportunity in the scheme of securities laws' enforcement for the tippee to weigh the reliability and the value of the tip against the amount he may be able to recover in a lawsuit against the tipper for his disclosure of false "inside information," especially when that tippee could conceivably recover treble damages under the Unfair Trade Practice Act. *See* G.S. 75-1 *et seq.* By allowing the *in pari delicto* defense the unscrupulous tippee will be acting at his own

risk when he knowingly buys stocks based on what he believes is "inside information."

Furthermore, the plaintiffs' reliance on *Webb v. Fulchire*, 25 N.C. 485 (1843) is misplaced. In *Webb*, the plaintiff thought he was making a fair wager on a shell game which was forbidden by gambling laws. However, the ball had been deceitfully removed by the defendant. The court reasoned that the plaintiff was not *in pari delicto* with the defendant and that since he parted with his money under the mistaken belief that it had been fairly lost by him, he could recover it. First of all, in the gambling situation, as the *Webb* court suggested, "the artless fool . . . bereft of his senses and his money" needed protection from himself. *Id.* at 487. The securities laws against inside trading, on the other hand, were meant to protect the securities markets, the innocent investing public, as well as the gullible tippee. In the present case, the plaintiffs were not gullible, unsophisticated investors. They knew that the profit they sought would be made due to information illegally related to them. Even when they recognized that they could sell their WNT shares for a good profit, their greed and unwise reliance on the defendants Fontes' and Hudson's inside knowledge persuaded them to wait for the corporate takeovers. Also, unlike the plaintiff in *Webb*, the Skinners cannot claim that they had played the stock market game according to the rules and had parted with their money under the mistaken belief that the defendants Fontes and Hudson were also playing fairly. The Skinners had full knowledge that the defendants were unprincipled and untrustworthy when they disclosed to them the "inside information." Likewise, the plaintiffs gladly participated in the wrongful conduct and became disenchanted only after discovering that the defendants' sword of deceit and breach of trust was double-edged.

In conclusion, although we reluctantly accept the arguments of a party who by allegations instigated the fraud in the first place, we do feel that the evils of inside trading are best combatted by a policy which allows the defendants to assert the defense of *in pari delicto*. Since the complaint discloses this unconditional affirmative defense, we hold the trial court properly granted the defendants' Rule 12(b)(6) motion with regard to the plaintiffs' claims for stock losses and margin call. In turn, we further hold that the *in pari delicto* defense must work as a bar against all the

claims for relief asserted by the plaintiffs, including those for commissions and margin interest. The complaint fails to state any claim upon which relief can be granted. The order of the trial court is

Affirmed in part and reversed in part.

Judge HILL concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

Believing that our primary concern in inside trader actions should be to deter the instigator, the tipper, and, therefore, that the *in pari delicto* defense should not be allowed, I dissent. A tippee's private cause of action against the tipper for the recovery of commissions and margin interest eliminates any illegal profit by the tipper. More importantly, it effectively discourages the tipper from distributing inside information, thereby eliminating the tippee's temptation to participate in the illegal activity.[1] Further, the tippee is not equally at fault. I would, therefore, affirm the trial court's order.

---

1. *See Berner v. Lazzaro*, 730 F. 2d 1319 (9th Cir. 1984).